Garrett Bernard Tupper Jr.
537 Liberty Ave.
Williston Park, NY 11596
garrett@peoplepc.com
In Proper Person

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Garrett Bernard Tupper Jr.,<br><br>Bankruptcy Petitioner,<br><br>vs.<br><br>U.S. BANK TRUST N.A., Aka<br>USBANCORP, Attorney Michael Rozea<br>Esq. LAW FIRM FRIEDMAN VARTOLO<br>LLP.,<br><br>Respondent, | CASE NO.: 24-73979-las<br><br>OBJECTION TO NON-CREDITOR UNDER 11 U.S.C § 503, § 523 DOCKET 28 AND 30<br><br>VIOLATION OF PROOF OF CLAIM UNDER 18 U.S.C. §§ 152(4), 157, AND 3571, 12 CFR, FDCPA § 1006.34, 15 U.S.C. § 1692g(a) VALIDATION OF DEBT AND PROOF OF CLAIM RULE 3002.1<br><br>RELEVANT FACTS OF FALSE CLAIMS, PETITIONER HAS NEVER BEEN BILLED BY CLAIMANT 18 U.S.C. § 152(4)<br><br>CLAIM IS DISALLOWED IN ITS ENTIRETY UNDER 11 U.S.C. § 502(b)(1)<br><br>CONFIRMATION HEARING:<br>Date: November 21 2024<br>Time: 01:00 PM |

**OBJECTION TO NONCREDITOR UNDER 11 U.S.C § 503, § 523 DOCKET 28 AND 30**

**VIOLATION OF PROOF OF CLAIM UNDER 18 U.S.C. §§ 152(4), 157, AND 3571, 12 CFR, FDCPA § 1006.34, 15 U.S.C. § 1692g(a) VALIDATION OF DEBT AND PROOF OF CLAIM RULE 3002.1**

**RELEVANT FACTS OF FALSE CLAIMS, PETITIONER HAS NEVER BEEN BILLED BY CLAIMANT 18 U.S.C. § 152(4)**

**CLAIM IS DISALLOWED IN ITS ENTIRETY UNDER 11 U.S.C. § 502(b)(1)**

Petitioner, Garrett Bernard Tupper Jr., respectfully objects to U.S. Bank Trust N.A. and FRIEDMAN VARTOLO LLP.'s defective and false non-creditor claims per their "*Motion to dismiss and relief from stay*" (with no exhibits of "**Proof of Claim**") acting in bad faith under 11 U.S.C § 523 and 18 U.S.C. § 152(4). In addition; the residence they list is a serious matter under Rule 3002.1 Motion for relief of Automatic Stay claiming Interest on the Debtor's Principal Residence. The petitioner is simply asking for the correct party (Beneficiary Lending Bank) to come forth with any debts so she can then add them to her plan, but U.S. Bank Trust N.A. is **NOT** to be entered into her plan. In addition; U.S. Bank Trust N.A. **NEVER** lending money for Mortgages and **DOES NOT** "*Service*" Mortgages, the petitioner cannot negotiate or complete the Official Form **410-S2** Itemize Post-Petition Fees, Expenses, and Charges of said debt with U.S. Bank Trust N.A. In addition; U.S. Bank Trust N.A. claiming holder of a Tranche or **MBS** Securities would have had to hire a professional agency to accomplish the task on your behalf, which is known as a "*Mortgage Servicer*". The Mortgage Servicer then can show a payment history to the petitioner. U.S. Bank Trust N.A. has **NEVER** billed the petitioner, as the required federal lending laws require continual billing every 30 days (created statements for each billing cycle) to complete a valid debt, which U.S. Bank Trust N.A. **CANNOT** provide the petitioner. If the petitioner entered this false claim by U.S. Bank Trust N.A. she then would violate Criminal

18 U.S. C. § 157. See exhibit "A" from U.S. Bank Trust N.A., no affiliation to said property. In addition, the requirements of the Bankruptcy Court;

1. The Federal Rules of Bankruptcy Procedure 13 further inform the analytical calculus. Rule 3001 addresses the requisite content and evidentiary effect of a properly filed proof of claim, and reads in relevant part under Rule 3001. Proof-of-Claim. The Petitioner filed a to show Proof of Claim National 410 Form which was ignored by Defendants that have no evidence of a Mortgage.

2. Evidentiary Effect A proof of claim executed and filed in accordance with the Court Rules shall constitute prima facie evidence of the validity and amount of the claim.

3. CPLR 213(4). Periods of limitation. Except as otherwise provided in, actions other than those for the recovery of real property, unless further limited by specific statute, may only be commenced within 6 years.

4. Attorney Michael Rozea Esq is unable to provide any Acceleration notices because this attorney and Law Firm FRIEDMAN VARTOLO LLP. Does not represent any said Beneficiary Lender.  Servicer such as SN Servicing Corporation can only act under the authority of a Nationally Licensed Bank Beneficiary Lender.

5. Fannie Mae using their Look Up Toll shows no said Mortgage Loan, FRIEDMAN VARTOLO LLP. Shows evidence of a Fannie Mae Deed of Trust contract, a contract that

is solely written for Fannie Mae NOT U.S. Bank National Association. More evidence

this Law Firm DOES NOT represent U.S. Bank National Association.

An acceleration clause was examined in the 1971 Rhode Island Supreme Court case of Scullian

v. Petrucci, in which the clause stated: In the event Purchaser defaults on any payment or fails to

comply with any condition of this contract the full amount shall be immediately due and payable.

FRIEDMAN VARTOLO LLP. Purporting Month(s) or Year(s) in payment rearranges, which by

Mortgage Lending Laws an Acceleration would have had to be sent more than 6 years ago, more

likely 10 years ago, well past the 6-year statute of limitations.

*U.S. Bank Trust N.A. sells Mortgage-Backed Securities (MBS) in the capital markets and "DOES NOT LEND MONEY FOR MORTGAGES". This process, the securitization of mortgage loans, goes back to the 1970s and has contributed to the availability and affordability of mortgage credit. The combination of high foreclosure THROUGH MORTGAGE SERVICER'S mortgage-backed securitization activity has many people attempting to understand the complex securitization process and identify the parties to the MBS transactions and their assigned responsibilities.*

*"A federal statute makes it a crime to "knowingly and fraudulently present any false claim for proof against the estate of a debtor." 18 U.S.C. § 152(4). However, as many courts have explained, "there is no private cause of action under 18 U.S.C. § 152(4) for filing a false proof of claim in a bankruptcy proceeding. "Heavrin v. Boeing Capital Corp., 246 F. Supp. 2d 728, 731 (W.D. Ky. 2003), aff'd sub nom. Heavrin v. Nelson, 384 F.3d 199 (6th Cir. 2004); see also Yee v. Ditech Fin. LLC (In re Yee), No. NC-16-1237-JuFB, 2017 Bankr. LEXIS 2167, at \*9 (B.A.P. 9th Cir. Aug. 3, 2017) (same); Wood v. U.S. (In re Wood), 341 B.R. 804 (Bankr. S.D. Fla. 2006) (same); Clayton v. Raleigh Fed. Sav. Bank, 194 B.R. 793, 796 (M.D.N.C. 1996), aff'd, 107 F.3d 865 (4th Cir. 1997) (same). Accordingly, Debtor's claims cannot survive on this basis.*

The Analytical Framework and Burden of Proof in Resolving Claim Objections; The

analytical course to be charted by bankruptcy courts in resolving claim objections is the subject

of well-established case law within the Ninth Circuit.  Rules 3001 and 3002 also provide relevant

procedural guidance.

A creditor's proper filing of a proof of claim constitutes prima facie evidence of the validity and amount of the claim pursuant to Section 502(a) and Rule 3001(f), so long as the claim is filed in writing using the proper official form.  See Branch Banking & Trust Co. v. R&S St. Rose Lenders, LLC, 2014 WL 4929506 at *3 (D. Nev. Oct. 1, 2014), appeal dismissed, 621 Fed. App'x 497 (9th Cir. Nov. 2, 2015).  "It is generally held that failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone. Rather, the claim is not entitled to be considered as prima facie evidence of the claim's validity." Heath v. Am. Express Travel Related Serv. Co. (In re Heath), 331 B.R. 424, 433 (9th Cir. BAP 2005), citing Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151 (9th Cir. 1996).

Under Section 502(b), if an objection to a claim is made by a party in interest, the court, after notice and a hearing, shall determine the amount of such claim.  Any dispute over the validity of a proof of claim is governed by state law.  Branch Banking at *3, citing Johnson v. Righetti (In re Johnson), 756 F.2d 738, 741 (9th Cir. 1985), cert. denied, 474 U.S. 828 (1985). Application of that legal framework to the facts of Debtor's case is the next step in resolving Debtor's Objections to U.S. Bank Trust N.A.'s Claims.

The Petitioner requests this Court examine the attorneys purportedly representing the U.S. Bank Trust N.A. entities as its attorneys at law with regards to whether they have or have ever had any contact with U.S. Bank Trust N.A., and if so to identify that person at U.S. Bank Trust N.A. who acted as their client. This request is based upon the following language referencing the case in the United States Supreme Court Hatfield v. King, 184 U.S. 162 (1902).

A party such as U.S. Bank Trust N.A., is required to establish that it possesses the mortgage with a written signature by the grantor. If the party does not make the requisite showing, the claims are void, why is the purported claim by FRIEDMAN VARTOLO LLP. shows **NO** exhibits of a Deed of Trust or Note that is an intricate part of a Mortgage claim. Reference U.S. Case Bank Trust N.A. v. Ibanez, 941 N.E.2d 40 (2011).

If these fraud claims continue, the petitioner is willing to hire Analyst Marie McDonnell into this case. There will be legal fees paid by the claimants for Marie McDonnell, see exhibit "D" of an affidavit by Marie McDonnell;

*Marie McDonnell is a Mortgage Fraud and Forensic Analyst and a credentialed Certified Fraud Examiner ("C.F.E."). Marie McDonnell is the founder and managing member of Truth In Lending Audit & Recovery Services, LLC of Brewster, Massachusetts, and has twenty-six (26) years of experience in transactional analysis, mortgage auditing, and mortgage fraud investigation. I've also trained state and federal law enforcement and regulatory agencies regarding the detection of invalid assignments, robo-signing, fraud, and misrepresentation in mortgage and foreclosure instruments.*

## FRIEDMAN VARTOLO LLP., A LAW, AND ATTORNEY MICHAEL ROZEA ESQ. DOES NOT REPRESENT U.S. BANK TRUST N.A.

As already disclosed above U.S. Bank Trust N.A. **DOES NOT** lend money for Mortgages they are solely a Corporate Trust selling MBS securities for Mortgage servicers (comparable to the company that is a Government **GSM** Fannie Mae, Freddie Mac and, Ginnie Mae);

*The charges (that attorneys do not represent parties they claim to represent in these court proceedings) are serious ones, affecting the integrity of counsel, they involve the due administration of justice in that court and cannot be passed without notice and action. It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean. We refrain from extended comment because, as heretofore stated, the testimony is mainly by ex parte affidavits, which are often, this case is no exception, quite unsatisfactory, and it is only through the sifting process of cross-examination that the real facts can be disclosed. When the truth is ascertained, if there be wrongs as charged, the language of judicial*

*condemnation should be clear and emphatic, and a punishment inflicted such as the wrongs deserve;*

1. *Hatfield v. King, supra., at 167-68 (1902) (Emphasis Supplied).*
2. *Hatfield v. King, 184 U.S. 162 (1902)*

U.S. Bank Trust National Association is **NOT** a Mortgage Lending Bank, which never holds any secured interest in any asset; they solely handle securitization mortgage-backed securities and do not service or manage mortgage loans. U.S. Bank Trust N.A. manages securitization as a holding company in the United States for mortgage-backed securities (MBS) investments. The Petitioner never applied for and NEVER signed any mortgage, nor signed a Note or Deed of Trust or Note with U.S. Bank Trust N.A. very unorthodox for this claim in the Petitioner's Chapter 13 case.

The Petitioner has never received a billing notice required under § 1026.41 Periodic Statements for Residential Mortgage loans. Every 30 to 45 days a billing notice is required to be sent by U.S. Bank Trust N.A., which has not occurred.

In reference to the securities Pooling Servicing Agreement for under Tranche Dwelling Series IV Trust that is claimed by the Law Firm FRIEDMAN VARTOLO LLP., all investors were fully refunded in purported Tranche Dwelling Series IV Trust, therefore is defunct and uncollectable if there was any such debt. The Petitioner never purchased any **MBS** security investments. Under § 9-203 Enforceability and Security Interest, no investor is to collect a debt for, no enforceable collection or interest in any asset, referencing **EDGAR** Search and Access.

Evidence in this search link.[1] In addition; the Tranche Dwelling Series IV Trust does not have standing to collect mortgage debts prima facie.

**Exhibit "below" of the search for the Trenche under purported Dwelling Series IV Trust. "No results found for Dwelling Series IV Trust. is defunct and uncollectable. See exhibit "below" No taxes paid on Dwelling Series IV Trust because the trust is closed and defunct. Explain why U.S. Bank Trust N.A. would never appear in this case. If any purported mortgage Notes would be in tax evasion and uncollectable for breach of investors' unpaid tax earnings.**



No results found for the past 5 years. Consider expanding the filed date range!

Under the Electronic Fund Transfer Act (EFTA) (15 USC 1693 et seq.) of 1978 is intended to protect individual consumers engaging in electronic fund transfers (EFTs), U.S. Bank Trust N.A. never sending any payment coupons, would not be able to provide any transferring documents showing how they came in possession of any loan as a secured creditor violating this act. The U.S. Trustee and this Court can ask the Law Firm FRIEDMAN VARTOLO LLP. "*Why would any homeowner be concerned about the Tranche **RCF2** Acquisition Trust be a Mortgage*

---

Any purported Mortgage with inactive securities is uncollectable. Explains why the Proof of Claim filed by the Petitioner was ignored.

*or had any relationship to their home? In addition; a Notice of appearance filed as though there is a claim on their home? Were there ever any Mortgage applications stating you are agreeing to borrow from a Tranche* **RCF2** *Acquisition Trust to fund your home*"

**Violation of the Fair Debt Collection Practices Act (FDCPA)**

***Fair Debt Collection Practices Act As amended by Public Law 111-203, title X, 124 Stat. 2092 (2010) As a public service, the staff of the Federal Trade Commission (FTC) has prepared the following complete text of the Fair Debt Collection Practices Act §§ 1692-1692p.***

## CONCLUSION

The Petitioner respectfully requests this court to strike the U.S. Bank Trust N.A.'s defective and false non-creditor claims acting in bad faith, based on the U.S. Bank Trust N.A. is a holder of MBS securities and does not create any sort of loans. In addition; Tranche RCF2 is closed and defunct. Order to disallow any filings in this Chapter 13 petition by FRIEDMAN VARTOLO LLP. Law Firm purporting to represent U.S. Bank Trust N.A., to appear in this bankruptcy court case. This secured claim is in violation under 18 U.S.C. §§ 152, 157, and 3571.

The Court concludes that when a creditor files proof of claim in a bankruptcy case pending in the District of New York, the claim is patently time-barred at filing under the limitations periods imposed by CPLR 213(4). The "statute of limitations" in the State of New York for foreclosure actions, per CPLR 213(4), is a six (6) year statute of limitations that measures the time-period starting from the lender's "acceleration" of the mortgage by an overt and unequivocal act until the lender actually commences a foreclosure action, which FRIEDMAN VARTOLO LLP., and failed to demonstrate an "acceleration" notice to the Petitioner.

The debtor has never been billed by U.S. Bank Trust N.A. which is a violation under the FDCPA, Tila, Respa, and Dodd-Frank laws. The U.S. Bank Trust N.A. and FRIEDMAN VARTOLO LLP. claim is **DISALLOWED** in its entirety under 11 U.S.C. § 502(b)(1). Any claims by U.S. Bank Trust N.A. are to be **DISALLOWED** under 11 U.S.C. § 502(b)(1).

Federal Rule of Civil Procedure 17(a)(1) which requires that "[a]n action must be prosecuted in the name of the real party in interest:

***Federal Rule of Civil Procedure 17(a)(1) which requires that "[a]n action must be prosecuted in the name of the real party in interest."See, In re Jacobson, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); In re Hwang, 396 B.R. 757,766-67 (Bankr. C.D. Cal. 2008). Mortgage Electronic Registration Systems, Inc. v. Chong, 824 N.Y.S.2d 764 (2006). MERS did not have standing as a real party in interest under the Rules to file the motion. The declaration also failed to assert that MERS, FMC Capital. LLC or Homecomings Financial, LLC held the Note.***

//////////////////////////////

/////////////////

**DATED Tuesday, November 19, 2024.**

Garrett Bernard Tupper Jr.

## CERTIFICATE OF SERVICE

On Tuesday, November 19, 2024. I caused to be served a true copy of the "Objection to Motion to Dismiss and Relief From Stay" by mailing the same by electronic mail and by United States Postal in a sealed envelope, with postage prepaid thereon, in a post office or official depositors of the ITS. Postal Service, addressed to the last known address of the addressee, mid the property address as indicated on the attached Service I ist annexed hereto., to the following Defendants:

Attorney Michael Rozea Esq.
FRIEDMAN VARTOLO LLP.

**DATED Tuesday, November 19, 2024.**

Garrett Bernard Tupper Jr.

**<u>Exhibit Cover Page</u>**

**Exhibit "A"** USBANCORP U.S. Bank Trust N.A. states they never hired these Law Firms

**Pages "2"**


**Exhibit "B"** Written by US Bank NA Role-of-Trustee

**Pages "5"**


**Exhibit "C"** Petitioner's "Proof of Claim" National 410 Form

**Pages "6"**


**Exhibit "D"** Affidavit of Marie McDonnell for U.S. Bank Trust N.A., explaining their function and that they do **NOT** make Mortgage claims.

**Pages "9"**

Exhibit "A"

Exhibit "A"



**U.S.bancorp**
*Investments, Inc.*

West Side Flats
60 Livingston Avenue
Saint Paul, MN 55107

Nov 13, 2024

Mr. Garrett Tupper
*537* Liberty Ave.
Williston Park NY 11596

Re: Reference to U.S. Bank National Association having any affiliation to said property at *537* Liberty Ave., Williston Park NY 11596.

Dear Mr. Tupper:

This letter is in response to the subpoena received by U.S. Bancorp Investments, Inc., requesting information regarding said property at *537* Liberty Ave., Williston Park NY 11596.

After searching our records using the address of said property, no such Mortgage or accounts were found, Dwelling Series IV Trust has been inactive and defunct since 2015 In addition; we **DID NOT** retain Attorney Michael Rozea Esq. or Friedman Vartolo Llp. 1325 Franklin Ave Ste 160 Garden City, NY 11530-1631. U.S. Bank National Association creates and services their in-house Mortgages, we never hire outside Servicers such as SN Servicing Corporation.

Should you have any questions, please do not hesitate to contact me. I can

be reached at *651*-466-7676.

Sincerely,

*Mark P. O'Neill*
Mark P. O'Neill
Assistant Vice President
Tax and Research
U.S. Bank National Association/U.S. Bancorp Investments

**usbank.com**

| NOT FDIC-INSURED | MAY LOSE VALUE | NOT GUARANTEED BY THE BANK | NOT A DEPOSIT | NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCIES |
| --- | --- | --- | --- | --- |

Investment products and services are available through U.S. Bancorp Investments, the marketing name for U.S. Bancorp Investments, Inc., member FINRA and SIPC, an investment adviser and a brokerage subsidiary of U.S. Bancorp and affiliate of U.S. Bank.

Insurance products are available through various affiliated non-bank insurance agencies, which are U.S. Bancorp subsidiaries. Products may not be available in all states. CA Insurance License# 0E24641.

Exhibit "B"

Exhibit "B"



Reports on the foreclosure challenges facing our country continue. There remains heightened interest and involvement from borrowers, elected officials, financial institutions and community organizations on the role of the trustee.

# Role of the Corporate Trustee

## Financial strength. Local expertise. Global reach.

It is estimated that some mortgage lenders securitized as much as 70-80% of their outstanding mortgages through the sale of Mortgage Backed Securities (MBS) in the capital markets. This process, the securitization of mortgage loans, goes back to the 1970s and has contributed to the availability and affordability of mortgage credit.

The combination of high foreclosure rates and high levels of mortgage backed securitization activity has many people attempting to understand the complex securitization process and identify the parties to the MBS transactions and their assigned responsibilities.

### Distinct Party Roles

Parties involved in a MBS transaction include the borrower, the originator, the servicer and the trustee, each with their own distinct roles, responsibilities and limitations.

*The Trust Indenture Act of 1939 prohibits bond issues valued at over $5 million from being offered for sale without a formal written agreement (an indenture), signed by both the bond issuer and the bondholder, that fully discloses the particulars of the bond issue. The act also requires that a trustee be appointed for all bond issues, so that the rights of bondholders are not compromised.*

*- Definition of "Trust Indenture Act of 1939"*



## U.S. Bank as Trustee:

As Trustee, U.S. Bank Global Corporate Trust Services performs the following responsibilities:

- Holds an interest in the mortgage loans for the benefit of investors
- Maintains investors/securities holder records
- Collects payments from the Servicer
- Distributes payments to the investors/ securities holder
- Does not initiate, nor has any discretion or authority in the foreclosure process
- Does not have responsibility for overseeing mortgage servicers
- Does not mediate between the servicer(s) and investors in securitization deals
- Does not manage or maintain properties in foreclosure
- Is not responsible for the approval of any loan modifications

All trustees for MBS transactions, including U.S. Bank, have no advance knowledge of when a mortgage loan has defaulted.

Trustees on MBS transactions, while named on the mortgage and on legal foreclosure documents, are not involved in the foreclosure process.

# What is a Mortgage Backed Security?

Residential and commercial property mortgages often are used to create Mortgage Backed Securities (MBS) by firms within the financial industry. Mortgage backed securities are financial instruments which represent an ownership in a group of mortgage loans, commonly referred to as pools, and their corresponding cash flows. Mortgage loans are purchased from banks, mortgage companies, and other originators and then assembled into pools by a governmental, quasi-governmental, or private entity and then deposited into trusts which issue securities entitling the investors to all principal and interest payments made by borrowers on the loans in the pool. This process is known as securitization.

MBS securities are brought to market by the owner of a pool of mortgages, typically referred to as the sponsor, and the transaction is structured and sold by investment bankers. A sponsor may be the originator of the mortgages or, in many circumstances, an aggregator who both originates and purchases mortgage loans from smaller originating institutions. When a pool of sufficient size and diversification has been aggregated, the sponsor will engage the appropriate parties to structure, sell and administer the mortgage loans and trust on an ongoing basis.



# Who initiates and Manages a Foreclosure?

U.S. Bank, as trustee for thousands of securitization transactions involving many millions of mortgages, is often mentioned in media reports about foreclosures. While trustees are listed on mortgages, and therefore in legal documents as well, as the owner of record, its interest is solely for the benefit of investors. The trustee does not have an economic or beneficial interest in the loans and has no authority to manage or otherwise take action on the loans which is reserved for the servicer.

As noted, the trustee does not play a role in initiating or managing a foreclosure process and consequently has little, if any, information relating to mortgage loan activities including a foreclosure. Depending on the particular trust and pool, the trustee may have very limited information on either the borrower or the property.

The servicer, who is selected by the Sponsor of the trust, may have to foreclose on a property if a borrower (mortgagee) does not make payments as required by the mortgage documents. Any action taken by the servicer must maximize the return on the investment made by the "beneficial owners of the trust" -- the investors.

## Servicer vs Trustee Responsibilities

Appointed by the sponsor, the Servicer is the contractual party to the trust for the benefit of investors, and performs the following responsibilities:



- Collects payments from the borrower/mortgagee
- Maintains loan level detail
- Pays property taxes and insurance (if applicable)
- Calls a default for non-payment
- Forecloses on the mortgage and maintains the related property
- Modifies mortgage terms within limitations outlined by the provisions of the Pooling and Servicing Agreement relevant to a particular MBS transaction
- Maintains the physical property to comply with local housing codes

U.S. Bank Global Corporate Trust Services, as Trustee, is responsible and accountable to the investors or holders of the securities that the mortgages are pledged against as collateral for the duties set forth in the contracts governing the transaction. These duties are carefully detailed in the contracts and are limited to the responsibilities specifically accepted by the trustee.

## How Do I Obtain Information on a Specific Mortgage Loan?

To learn more about a foreclosed property, contact the servicer for the MBS transaction that holds the mortgage as collateral. The most effective way to identify the servicer for a specific mortgage is to ask the borrower (homeowner) who they make their monthly payment to or from whom they receive their monthly statements. The firm receiving the payments and sending statements is generally the servicer for the MBS transaction and can offer more details regarding a foreclosed property.

To ensure clarity of the various participants related to a foreclosure process with MBS transactions, U.S. Bank has taken two important actions. U.S. Bank has sent notices to servicers with whom they work on MBS transactions to reinforce the importance of properly identifying U.S. Bank as Trustee for the specific trust in all foreclosure actions and filings, complying with industry servicing practices and maintaining any foreclosures in accordance with applicable laws. Secondly, U.S. Bank established a dedicated toll-free (800) number to handle calls related to loans which identify U.S. Bank as Trustee. Our professional staff explains to callers the role of U.S. Bank as Trustee and also provides the information callers need to connect with the servicer who can best address their questions.

For more information about U.S. Bank and our role as trustee in MBS transactions, please call (800) 236-3488 between the hours of 8 a.m. and 5 p.m. central standard time Monday through Friday.



Additional Sources of Information:
-- American Bankers Association White Paper, The Trustee's Role in Asset-Backed Securities, dated November 9, 2010 (http://www.aba.com/Press+Room/110910RoleofATrustee.htm)
-- The Trust Indenture Act of 1939

## Why not modify mortgage loans in default?

Borrowers agree, under the terms of their mortgage and note, that upon a payment default the lender or owner has the right to assume ownership of the property. Whether the servicer pursues a foreclosure or considers a modification of the loan, the goal is still to maximize the return to investors. Consideration of any loan modification is predicated on whether the trust documents allow modifications, the underwriting criteria applicable to the particular borrower's circumstances, and federal and state laws concerning loan modifications.

Regardless, the servicer is fully empowered to enter into modifications with borrowers so long as such actions comply with industry servicing practices, is allowed under the trust documents, maximizes the return to investors and complies with relevant laws.

# Parties to a Mortgage Backed Securities Transaction

### Borrower

The person or entity responsible for the mortgage note and making principal and interest payments in accordance with the underlying mortgage documents.

### Investment Bank/Sponsor

Responsible for structuring the MBS transaction and selling the securities to investors.

### Investor

The buyer and owner of an MBS certificate or certificates.

### Originator

The financial institution or mortgage lender who originally initiates the mortgage agreement with the borrower.

### Servicer

Appointed by the sponsor and is a contractual party to the trust, to administer the mortgages loans and to collect monthly payments (e.g. principal/interest, tax, insurance). After collection, the servicer sends the funds to the trustee who then makes payment to the investors. If a borrower (mortgagee) does not make payments to the servicer as required by the mortgage documents, the servicer may have to foreclose on the property and provide property maintenance to maximize the return on the investment made by the "beneficial owners of the Trust" -- the investors. Some MBS transactions have more than one servicer. The servicer does not own the mortgages/collateral. The trustee does not designate the loan servicers, nor are the loan servicers agents of the trustee.

### Trust

Generally a special purpose entity, such as a Real Estate Mortgage Investment Conduit (REMIC), that is formed solely to hold the mortgage collateral and to issue the securities which are then sold to investors. The trust owns the pooled mortgages. The trust conducts no other business. Certificates issued by the trust represent a financial interest in a pool of mortgages owned by the trust and is the primary source of funds for payment of interest and principal due to the investors on certificates they own.

### Trustee

An independent party, responsible for administering the trust for the benefit of investors. While the trustee is listed as the owner of record, the trustee does not have an economic or beneficial interest in the loans. The trustee is the owner of the mortgage solely for the benefit of the investors in the mortgage backed securities, who are the true beneficial owners of the mortgages. The Trustee holds a security interest in the mortgaged property by having the mortgage loans assigned in the name of the trustee for the benefit of the trust (e.g. U.S. Bank as Trustee for the MBS Trust) or in the name of MERS, a Mortgage Electronic Recording System used by many of the largest financial institutions. The duties of the trustee are administrative in nature, are clearly spelled out in the MBS transaction documents, and generally are non-discretionary in nature.

For more information about U.S. Bank and our role as trustee in MBS transactions, please call (800) 236-3488 between the hours of 8 a.m. and 5 p.m. central standard time Monday through Friday.



All of US serving you®

**usbank.com/corporatetrust**

Investment and Insurance products are:

| NOT A DEPOSIT | NOT FDIC-INSURED | MAY LOSE VALUE | NOT GUARANTEED BY THE BANK | NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY |
|---|---|---|---|---|

U.S. Bank is not responsible for and does not guarantee the products, services, performance or obligations of its affiliates.

ROT511

Exhibit "C"

Exhibit "C"

**Fill in this information to identify the case:**

Debtor 1    **Garrett Bernard Tupper, Jr.**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: **EASTERN DISTRICT OF NEW YORK**

Case number    **8-24-73979-las**

Official Form 410

# Proof of Claim

**12/24**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

**S/N Servicing Corp.**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**S/N Servicing Corp.**
Name

**323 5th Street**
Number    Street

**Eureka**      **CA**    **95501**
City      State    ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

Name _____

Number    Street _____

City      State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one): _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

SN Servicing Corporation is purporting an incorrect Mortgage Account Number and has continued to show Proof of Claim, in addition; to failed to show which Banking Beneficiary Lender is the Noteholder

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6.** Do you have any number you use to identify the debtor?

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    7   4   0   5

**7.** How much is the claim?     $0.00     **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____
Goods sold
_____

**9.** Is all or part of the claim secured?

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** _____

**Amount of the claim that is secured:** _____

**Amount of the claim that is unsecured:** _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** _____

**Annual Interest Rate** (when case was filed) _____
☐ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition:** _____

**11.** Is this claim subject to a right of setoff?

☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( _____ ) that applies. _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name _____
First name          Middle name          Last name

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
Number          Street

_____
City          State     ZIP Code

Contact phone _____ Email _____

SN Servicing Corporation is purporting an incorrect Mortgage Account Number and has continued to show Proof of Claim, in addition; to failed to show which Banking Beneficiary Lender is the Noteholder

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: _____ | Principal balance: _____ | Principal due: _____ | Principal & interest: _____ |
| Debtor 1: _____ | Interest due: _____ | Interest due: _____ | Monthly escrow: _____ |
| Debtor 2: _____ | Fees, costs due: _____ | Prepetition fees due: _____ | Private mortgage insurance: _____ |
| Last 4 digits to identify: ___ ___ ___ ___ | Escrow deficiency for funds advanced: _____ | Escrow deficiency for funds advanced: _____ | Total monthly payment: _____ |
| Creditor: _____ | Less total funds on hand: − _____ | Projected escrow shortage: _____ | |
| Servicer: _____ | Total debt: _____ | Less funds on hand: − _____ | |
| Fixed accrual/daily simple interest/other: _____ | | Total prepetition arrearage: _____ | |

## Part 5 : Loan Payment History from First Date of Default

| | Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

Case number: _____

Debtor 1: _____

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

# Exhibit "D"

**Affidavit of Marie McDonnell for U.S. Bank Trust N.A. explaining their function and that they do NOT make Mortgage claims.**

# Exhibit "D"

|  |  |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:12-cr-198-J-2S |
| v. | |
| LORRAINE BROWN | AFFIDAVIT IN SUPPORT OF REGISTER OF DEEDS JOHN L. O'BRIEN'S AFFIDAVIT AND REQUEST FOR RESTITUTION |

### AFFIDAVIT OF MARIE MCDONNELL, C.F.E.

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS | § |
| COUNTY OF BARNSTABLE | § |

Before me, the undersigned notary, on this day personally appeared Marie McDonnell, C.F.E., the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

## *Background and Qualifications*

1.     My name is Marie McDonnell, C.F.E., I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.     I am a *Mortgage Fraud and Forensic Analyst* and a credentialed *Certified Fraud Examiner* ("C.F.E."). I am the founder and managing member of Truth In Lending Audit & Recovery Services, LLC of Brewster, Massachusetts and have twenty-six (26) years' experience in transactional analysis, mortgage auditing, and mortgage fraud investigation.

3.     I am also the President and Chief Executive Officer of McDonnell Property Analytics, Inc., a litigation support and research firm that provides mortgage-backed securities research services, foreclosure forensics, and forensic title examinations to attorneys nationwide. McDonnell Property Analytics also advises and performs services for special agents of the federal government, attorneys general, county registers of deeds, courts and other governmental agencies.

4.     I am the same Marie McDonnell who provided amicus briefs to the Massachusetts Land Court (4/17/2009 & 6/29/2009) and to the Massachusetts Supreme Judicial Court (10/1/2010) in the landmark cases *U.S. Bank National Association v. Ibanez* and *Wells Fargo Bank, N.A. v. LaRace*, 458 Mass. 637 (2011) in which the courts vacated two foreclosures prosecuted by trustees of securitization trusts.[1] My seminal contribution was to shift the debate beyond defective assignments of mortgage to an examination of the fatal breaks in the chain of title that occurred due to the utter failure of the entities that securitized these mortgages to document the transfers between themselves.

5.     In January 2011, John L. O'Brien, Register of the Essex Southern District Registry of Deeds in Salem, Massachusetts ("Register O'Brien"), commissioned McDonnell Property Analytics, Inc. ("MPA") to conduct a forensic examination to test the integrity of his registry due to his concerns that: 1) Mortgage Electronic Registration Systems, Inc. ("MERS") proclaims that its members can avoid recording assignments of mortgage if they register them electronically in the MERS® System; and 2) due to the robo-signing scandal spotlighting Linda Green – an employee of Defendant DocX, LLC – as featured in a 60 Minutes exposé on the subject which first aired on April 3, 2011.

6.     I submitted my findings to Register O'Brien on June 28, 2011 which revealed widespread, systemic, patterns of practice employed by or on behalf of several of the nations' largest banks that had eroded the transparency and corrupted the chain of title to real property records maintained by the Essex Southern District Registry of Deeds.

7.     I found that by failing to record assignments of mortgage necessary to maintain a complete, unbroken chain of title, combined with the recordation of assignments of mortgage that contained false statements, misrepresentations and omissions of material fact in a feigned and fraudulent attempt to close the gap, resulted in a corrupted chain of title. My report is available to the public in its entirety at: http://salemdeeds.com/pdf/Audit.pdf.

8.     In another landmark mortgage foreclosure case brought on appeal before the Massachusetts Supreme Judicial Court in the matter of *Henrietta Eaton vs. Federal National Mortgage Association & Another*, 462 Mass. 569 (2012) ("*Eaton v. Fannie Mae*"), I filed an amicus brief and a supplemental brief in which I explained how the foreclosure of Eaton's property was grounded in a fraudulent assignment of mortgage that was typical of what I observed while auditing the Essex Southern District Registry of Deeds.[2]

9.     I've also trained state and federal law enforcement and regulatory agencies regarding detection of invalid assignments, robo-signing, fraud and misrepresentation in

---

[1]  McDonnell's *Amicus Brief* in the appeal of *U.S. Bank National Association v. Ibanez* and *Wells Fargo Bank, N.A. v. LaRace* is available on the Massachusetts Supreme Judicial Court's website at: http://www.ma-appellatecourts.org/search_number.php?_dno=SJC-10694&get=Search.

[2]  McDonnell's *Amicus Brief* filed on September 30, 2011 and her *Supplemental Brief* docketed on January 30, 2012 in the appeal of *Henrietta Eaton vs. Federal National Mortgage Association & Another*, SJC-11041 are available on the Massachusetts Supreme Judicial Court's website at: http://www.ma-appellatecourts.org/display_docket.php?dno=SJC-11041.

mortgage and foreclosure instruments. For example, in March of 2012, I conducted a one-day workshop for New York Attorney General Eric Schneiderman's staff, United States Attorneys, and investigators. In February 2013 I will be conducting a three-day training in Washington, D.C. for special agents of the federal government at the request of the Office of the Inspector General for the Federal Housing Finance Agency.

10.     My experience in working with state and federal law enforcement dates back to the early to mid-1990's' when I uncovered a mortgage fraud scheme, orchestrated by The Dime Savings Bank of New York, that led to Attorney General investigations in Massachusetts, New Hampshire and Connecticut and, ultimately, to multi-million dollar settlement awards and relief programs for consumers.

## *Forensic Examination of the Essex Southern District Registry*

11.     John O'Brien was the first Register of Deeds in the country to commission a forensic examination of a Registry of Deeds. He did so because he was troubled by the fact that he could no longer look his constituents in the eye and tell them truthfully who owned their property. Despite this awareness, Register O'Brien was not prepared for the results of my audit and when he read my report he declared publically: "*My registry is a crime scene.*"

12.     The result of my investigation revealed widespread, systemic, methodical patterns of practice whereby the public land recording system has been used by the nation's largest banks to transfer title to real property that the banks do not own. This is especially true where a foreclosure is involved.

13.     This charade is being carried out by the filing of a defective, often fraudulent conveyancing document, such as an assignment of mortgage, which becomes the "breeder document" that enables the alleged assignee to obtain all other documents necessary to extinguish the property owner's rights and transfer full legal and equitable title as well as possession to the fraudster.

14.     Once these documents appear in a registry of deeds, they are presumed to be valid and are relied upon by the public, the courts, title examiners, title insurance companies, and other stakeholders as the underlying real property is bought, sold, financed, and on occasion, foreclosed upon.

15.     Because it has a direct bearing on the restitution Register O'Brien is seeking from this Court as it considers the sentencing of Lorraine Brown, I briefly summarize the scope of the audit and results that emerged as we completed our review of 565 assignments of mortgage which required that we examine some 3,317 title documents.[3]

---

[3] A true and correct copy of my Report entitled *Forensic Examination Of Assignments Of Mortgage Recorded During 2010 In The Essex Southern District Registry Of Deeds*, which I released on June 28, 2011, is available on Register O'Brien's website at: http://salemdeeds.com/pdf/Audit.pdf.

16.     I accepted this assignment on a pro bono basis because of its high and urgent value to the public trust, and to educate the 50 Attorneys General who were, at that time, brokering a settlement with five of the nation's largest banks in an attempt to resolve fraudulent foreclosure practices. I also wanted to prove the concept that registries of deeds across all counties and jurisdictions in the United States are similarly impacted and need to have their registries audited as well. Finally, I wanted to give consumers, attorneys, registers of deeds, title examiners, and law enforcement agencies some guidelines as to how they can research the public records to detect invalid documents and gaps in the chain of title that need to be addressed.

17.     I defined the scope of the examination by selecting all assignments of mortgage that were recorded during the year 2010 to and from three of the nation's largest banks: JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., and Bank of America, N.A. The sample was not random or arbitrary; we included every assignment that appeared in the Grantor / Grantee index using the registry's online search engine. The study included 147 assignments involving JPMorgan Chase; 278 assignments involving Wells Fargo Bank; and 140 assignments involving Bank of America.  A total of 565 assignments were examined.

18.     The results, conclusions and findings of the audit my staff and I performed for John O'Brien, Register of the Essex Southern District Registry of Deeds include the following:

- a.  We were able to trace ownership to only 287 of 473 mortgages which translates to a transparency rating of only sixty percent (60%).

- b.  46% and 47% of mortgages were either MERS registered or owned by the Government Sponsored Enterprises (i.e., Fannie Mae, Freddie Mac, Ginnie Mae), respectively. Typically ownership of these mortgages is highly obscure.

- c.  37% of mortgages were securitized into public trusts (as opposed to private trusts), which are typically more discoverable through use of forensic tools and high cost, subscription-based databases.

- d.  Only 16% of all assignments examined are valid.

- e.  75% of all assignments examined are invalid and an additional 8.7% are questionable (require more data.)

- f.  27% of the invalid assignments are fraudulent, 35% are "robo-signed" and 10% violate the Massachusetts Mortgage Fraud Statute.

- g.  683 assignments are missing, translating to approximately $180,000 in lost recording fees per 1,000 mortgages whose current ownership can be traced.

## *Lorraine Brown, DocX, LLC & LPS*

19.    I am profoundly familiar with the style, content and propensity for defects and misinformation contained in various assignments and discharges of mortgage that were prepared, executed and recorded in the public records throughout the country by and under the direction of Lorraine Brown at DocX, LLC, Lender Processing Services ("LPS") and its predecessor, Fidelity National Information Services.

20.    Because of the depth and breadth of my specialized knowledge in this regard, Register John O'Brien has requested that I estimate the cost of auditing some 5,963 documents generated by DocX, LLC that were recorded in the Essex Southern District Registry of Deeds, or registered in the Essex Southern District Land Court Registry from January 1, 2005 through October 31, 2009.

21.    Register O'Brien informed me that during this time period a total of 5,688 discharges of mortgage and 275 assignments for a total of 5,963 documents were recorded/registered by DocX, LLC in the Essex Southern District Registry of Deeds and Land Court Registry.

22.    I have had the opportunity to conduct a preliminary review of a representative sampling of these documents and found that in addition to the fact that they are admitted forgeries (*See* Lorraine Brown's testimony and Plea Agreement with the Department of Justice), the majority of these documents evidence gaps in the chain of title or constitute wild deeds because they fail to connect the original mortgagee with the entity who is discharging or assigning the mortgage.

23.    Register O'Brien has also determined that a total of 10,567 DocX, LLC discharges and assignments were recorded by in his Registry of Deeds from 1998 through 2011. I have reviewed a sampling of these earlier documents and can attest to the fact that they bear the same infirmities as the DocX, LLC documents involved in Count One of the United States Attorney's case now before this Court.

24.    Register O'Brien is concerned that the DocX, LLC documents which have been recorded against the title to his constituents' properties are now void as a matter of law due to the admission of Lorraine Brown that they are forgeries. Moreover, these DocX, LLC filings (*most of which do not involve properties that are or have been in foreclosure*) are defective for other reasons and further compromise the good, clear and marketable title to real property that Register O'Brien's constituents have a right to expect.

## *Restitution Calculus*

25.    When considering restitution for the victims of Lorraine Brown's actions, the Court should understand that there is no simple "fix" that will undo the damage caused by the recordation of approximately one million (1,000,000) forged documents in the nation's brick and mortar land recording facilities.

26.     The problem of replacing an otherwise valid conveyancing document that has been executed or notarized by a robo-signer or a surrogate-signer can be cured by recording a corrective document that has been duly acknowledged by a corporate officer who has personal knowledge of the facts contained therein and who is properly authorized.

27.     However, my preliminary research and review of the subject documents prepared, executed and recorded by DocX, LLC indicate that there are other issues that must be addressed as well. For example:

> ✱  The entity purporting to discharge or assign the mortgage is not the original lender and did not establish its authority to act by way of an assignment or power of attorney. Accordingly, the DocX document reveals a break in the chain of title.

> ✱  A power of attorney referenced in the DocX document was not recorded; or does not cover the situation at hand.

> ✱  The assignment of mortgage purports to convey the note and mortgage from the lender directly into a securitized trust years after the trust closed. Such a conveyance is a legal impossibility and indicates that the assignment is a deception.

28.     Based on my prior experience of having conducted McDonnell Property Analytics' *Forensic Examination Of Assignments Of Mortgage Recorded During 2010 In The Essex Southern District Registry Of Deeds,* and in view of the fact that the vast majority of the DocX, LLC documents are discharges of mortgage rather than assignments, I estimate that it would cost $375.00 per property to identify the damage to the chain of title caused by these forged and fraudulent filings.

29.     Considering the fact that there are approximately 1,000,000 DocX documents on record and that the Essex Southern District Registry of Deeds is known to contain 10,567 of these, or about 1.06%, I believe that it would be helpful to the Court and to the public at large to conduct a study on 1,000 (0.10%) of these questioned documents to identify the defects and recommend a repair process.

30.     I would design an audit plan that maps out the types of document and title defects that exist in the control group; identify the DocX client who ordered the document; and recommend the steps that would need to be taken to rectify the defects.

31.     I would also consult with a number of title insurance companies and several of DocX's major clients to discuss the feasibility of restoring clouded titles without having to resort to the judicial process.

32.     Finally, I would consult with a variety of technology providers to determine how we might use technology to identify the DocX documents as well as gaps in the chain of title that resulted from these filings.

33.     I propose, therefore, that the Court award Register O'Brien an additional sum of money to cover the cost of this sampling and the preparation of a report that would recommend a methodology for repairing the damage as follows:

| | |
|---|---:|
| Title Examination: 1,000 documents/properties @ $375.00 = | $375,000.00 |
| Subscription-Based Services e.g., Bloomberg, ABSNet Loan: | $24,000.00 |
| Compile Data; Statistical Analysis; Write Report: | $75,000.00 |
| Consultants; Legal, etc.: | $15,000.00 |
| Printing; Mail; Travel; etc.: | $3,015.00 |
| | **$492,015.00** |

Subscribed and signed voluntarily, under penalty of perjury, pursuant to the provisions of 18 U.S.C. § 1621.

*Marie Mc Donnell*

MARIE MCDONNELL, C.F.E., Affiant
*Mortgage Fraud and Forensic Analyst*
*Certified Fraud Examiner, ACFE*

Marie McDonnell, President & CEO
McDonnell Property Analytics, Inc.
P.O. Box 2067, Orleans, Massachusetts 02653
774-323-0892 (Office) | 774-323-0894 (Fax)
E-Mail: Marie@mcdonnellanalytics.com

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF BARNSTABLE, SS

At Brewster, Massachusetts, on this 11th day of January 2013, before me, the undersigned authority, personally appeared MARIE MCDONNELL, proved to me through evidence of identity, to wit: a Massachusetts Driver's License, to be the signer(s) of the attached document, and who swore or affirmed to me, under the penalties of perjury, that the contents of said document are truthful and accurate, to the best of her knowledge and belief.

Subscribed to and sworn before me.

_Christine M. Murphy_

Notary Public

My Commission expires: _____

A True Copy Attest
CHRISTINE M. MURPHY
NOTARY PUBLIC
My commission expires June 17, 2017